**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | ) | |
| **SYED RIZWAN AHMED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-cv-893 (APM)** |
| | ) | |
| **U.S. DEPARTMENT OF HOMELAND** | ) | |
| **SECURITY et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION</u>**

**I.**

Plaintiff Syed Rizwan Ahmed is a lawful permanent resident of the United States who has filed a spouse visa application on behalf of his wife, Aleena Siddiqui, a citizen of Pakistan. Compl. in the Nature of Mandamus Arising from Defs.' Refusal to Adjudicate Pl.'s Immigrant Visa Appl., ECF No. 1 [hereinafter Compl.], ¶¶ 14, 16. Under the normal process for such petitions, the petitioning spouse must file a Form I-130—a Petition for Alien Relative—with the United States Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1). Once USCIS approves the petition, the petition is sent to the State Department's processing center; next, the foreign spouse submits another application and, eventually, participates in an interview at the embassy with jurisdiction over their residence. *See* 8 C.F.R. § 204.2(a)(3); 22 C.F.R. § 42.62. Finally, after the interview, "the consular office must [either] issue [or] refuse the visa." 22 C.F.R. § 42.81(a).

In this case, Plaintiff alleges that he first filed a Form I-130 for Ms. Siddiqui on February 22, 2018; that USCIS approved the petition on September 5, 2019; that the State Department's

processing center assigned the application a case number at some point after that; but that the State Department still has not scheduled Ms. Siddiqui's interview.  Compl. ¶¶ 17–21.  Plaintiff believes that the delay stems from the Controlled Application Review and Resolution Program ("CARRP"), a program that "intentionally delays [some] applications . . . due to security concerns."  *Id.* ¶¶ 28–29.

He therefore brings this action, calling on the court to compel defendants to adjudicate the petition and hold CARRP unlawful.  *See* Compl. at 8–9.  He asserts two claims: one under the Administrative Procedure Act ("APA") and the Mandamus Act, 28 U.S.C. § 1361, seeking relief for "agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and the other under the Fifth Amendment Due Process Clause, U.S. Const. amend. V.  He names as defendants the Department of Homeland Security ("DHS"); USCIS; the State Department; the U.S. Embassy in Islamabad, Pakistan; Alejandro Mayorkas, Secretary of DHS; Tracy Renaud, Senior Official Performing the Duties of the Director of USCIS; Antony Blinken, Secretary of State; and Angela Aggeler, Chargé of the U.S. Consulate in Islamabad (collectively, "the Government").  *See* Compl. ¶¶ 3–10.  He seeks declaratory and injunctive relief, a writ of mandamus, and attorney's fees. Compl. at 8–9.  The Government has moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment.  *See* Mot. to Dismiss, Mot. for Summ. J. & Mem. in Supp. Thereof, ECF No. 4 [hereinafter Defs.' Mot.].

For the reasons that follow, the court grants the Government's motion.

## II.

When deciding a motion under Rule 12(b)(1), a court must accept all well-pleaded factual allegations in the complaint as true.  *See Jerome Stevens Pharm., Inc. v. FDA.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Because the court has "an affirmative obligation to ensure that it is acting

within the scope of its jurisdictional authority," however, the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted). To that end, the court may consider "such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). Thus, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *See Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint need not be "detailed," but the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The court need not accept as true either "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns*

*Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, then a court must grant the defendant's Rule 12(b)(6) motion.  *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

### III.

The Government has moved to dismiss on the basis that (1) the court lacks jurisdiction as to certain defendants; (2) on the merits, there has been no unreasonable delay; and (3) Plaintiff's claims as to CARRP are untenable because CARRP is not "at play" at all.  Defs.' Mot. at 1, 15. The court begins with the Government's jurisdictional arguments before addressing Plaintiff's challenges to CARRP and the merits of his unreasonable-delay claim.

### A.

The Government argues that Plaintiff's claims against DHS and USCIS officials are "plainly moot" because those officials have completed their role in the visa-adjudication process.[1] Defs.' Mot. at 6.  As pleaded, at the time of filing, USCIS—a component of DHS—had already approved the visa application at issue here and sent it to the State Department for further processing.  *See* Compl. ¶¶ 4, 19.  As a result, the Government suggests, there is no requested relief that the court can grant as to these defendants, rendering the claims moot.  *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) ("A case is moot when the challenged conduct ceases such that . . . it becomes impossible for the court to grant any effectual relief . . . ."  (internal quotation marks omitted)).  But "[t]he Government . . . argues the wrong

---

[1] The Government also urges the court to dismiss claims against Department of Justice officials named as defendants, but the court sees no such defendants on the complaint.  Defs.' Mot. at 6–7; *see generally* Compl.  Aside from DHS and USCIS and its officials, the remaining defendants are the State Department, its Secretary, the U.S. Consulate in Islamabad, and one of its officials.  *See* Compl. ¶¶ 3–10.

doctrine." *Zandieh v. Pompeo*, No. 20-cv-919 (JEB), 2020 WL 4346915, at *4 (D.D.C. July 29, 2020). As the Supreme Court has explained, "the doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The jurisdictional problem here is not that Plaintiff's claims against DHS and USCIS defendants disappeared over the course of the litigation (i.e., became moot). Rather, it is that from the moment Plaintiff filed suit, there was no live case or controversy against these defendants (i.e., Plaintiff lacks standing).

"The irreducible constitutional minimum of standing contains three elements": an "injury in fact," "a causal connection between the injury and the conduct complained of," and a likelihood "that the injury will be redressed by a favorable decision." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). Here, USCIS and DHS had already completed their role in the process by approving Ms. Siddiqui's application, and so based on the facts as pleaded in the complaint, Plaintiff's asserted injury—ongoing unreasonable delay in processing his wife's visa application—is not fairly traceable to DHS and USCIS defendants and would not be redressed by a favorable decision as to them when he filed this action. *See id.* at 561.

Plaintiff attempts to save his claims against DHS and USCIS defendants by arguing that "this case involves a live claim for damages, which, in and of itself, should prevent dismissal for mootness." Pl.'s Opp'n to Defs.' Mot., ECF No. 5 [hereinafter Pl.'s Opp'n], at 9. But, putting aside the fact that mootness is not the relevant justiciability doctrine, there are two major problems with this argument. First, this case does not actually involve any claim for money damages. Plaintiff requests declaratory relief, injunctive relief, a writ of mandamus, and attorney's fees and

costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Compl. at 8–9.  But fees and costs are not damages, and "an interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."  *Liu v. INS*, 274 F.3d 533, 536 (D.C. Cir. 2001) (internal quotation marks omitted); *see also Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 637 (D.C. Cir. 2000) ("[T]here must be standing and otherwise proper subject matter jurisdiction for the *underlying* action; EAJA is not a highway to federal court for anyone wishing to uphold the rule of law.").

The second, and more fundamental, problem is that damages are not available for the claims asserted.  Plaintiff brings two claims: one under the APA and one under the Due Process Clause.  Compl. ¶¶ 23–41.  Neither supports a claim for money damages.  The APA by its terms waives sovereign immunity only for "relief other than money damages."  5 U.S.C. § 702.  And there is no cause of action for money damages against the United States or its agencies under the Due Process Clause.  *See, e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 484–85 (1994).  Thus, as the court is unable to award damages or equitable relief against DHS and USCIS defendants, there is no justiciable claim against them, and so the complaint must be dismissed as to those defendants.

For the same reasons, Plaintiff's CARRP-related claims must also be dismissed.  The court takes judicial notice that CARRP is a USCIS policy.[2]  Indeed, Plaintiff has alleged as much.  Compl. ¶ 28 ("DHS has a policy, known as [CARRP] . . . ."); *id.* ¶ 31 (explaining that CARRP governs the actions of USCIS field officers).  The Government moreover asserts that CARRP does

---

[2] *Policy for Vetting and Adjudicating Cases with National Security Concerns*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/sites/default/files/document/foia/CARRP_Guidance.pdf (Apr. 11, 2008).  The court may take judicial notice of information on official government websites without transforming the motion into one for summary judgment. *Dastagir v. Blinken*, No. 20-cv-2286 (TNM), 2021 WL 2894645, at *1 n.3 (D.D.C. July 9, 2021); *Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.").

6

not apply to a Form I-130; this is also reflected in publicly available USCIS documents.[3]  Plaintiff does not contest the Government's assertion that CARRP does not apply to the visa application at issue.  Instead, he simply argues CARRP is an unlawful policy.  *See* Pl.'s Opp'n at 10, 13.  But "[i]f CARRP does not apply to [Plaintiff's wife], and [he has] not been affected by it, then [he has] no standing to pursue a claim based on it."  *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376 (ABJ), at \*6 (D.D.C. Mar. 19, 2020).  And, as in *Ghadami*, Plaintiff here "appear[s] to concede this point" by not addressing it.  *Id.* (citing cases explaining that a plaintiff's failure to address certain arguments in an opposition to a motion to dismiss may be treated as a concession).  In sum, Plaintiff has "not provided the [c]ourt with any facts to conclude that the policy applies to [his wife].  Thus, [he has] not suffered an injury-in-fact as a result of the policy, and any finding that the policy is unlawful would not redress [his] alleged injuries."  *Id.* at \*6 n.4.

The complaint does allege that "[u]pon information and belief, . . . [d]efendants are intentionally delaying a response to the [State Department] in regard to Aleena Siddiqui's visa application pursuant to the CARRP program," and that "USCIS and the [State Department] are and have been complicit in the delay."  Compl. ¶¶ 29–30.  But Plaintiff has set forth no factual allegations to support that conclusion, and the court need not accept as true mere speculation.  *Twombly*, 550 U.S. at 555; *see also Ghadami*, 2020 WL 1308376, at \*6 (dismissing similar claim that "on information and belief," defendants intentionally delayed responding to a visa application "pursuant to the CARRP program"); *Dastagir v. Blinken*, No. 20-cv-2286 (TNM), 2021 WL 2894645, at \*1 n.7 (D.D.C. July 9, 2021) (same).  The court will therefore also grant the Government's motion to dismiss with respect to the challenge to CARRP.

---

[3] *Fraud Detection & National Security: Controlled Application Review and Resolution Program (CARRP) Independent Study*, U.S. Citizenship and Immigration Services, https://www.aclusocal.org/sites/default/files/wp-content/uploads/2013/01/FDNS-CARRP-Independent-Study-Powerpoint-v.-1.1-Dec.-28-2011.pdf (Dec. 28, 2011).

**B.**

The court next considers the merits of Plaintiff's unreasonable-delay claim under the standard for motions to dismiss brought under Rule 12(b)(6). Plaintiff claims that the Government has unreasonably delayed adjudicating his wife's visa application and seeks relief for that delay under the APA. *See* Compl. ¶¶ 24–35. The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Mashpee Wampanoag Tribe Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (quoting 5 U.S.C. §§ 555(b), 706(1)). "There is no per se rule as to how long is too long to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (internal quotation marks omitted). Instead, courts apply the six factors set forth in *Telecommunications Research & Action Center v. FCC* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) The time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re People's Mojahedin Org. of Iran*, 680 F.3d 382, 836–37 (D.C. Cir. 2012).  The question whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful."  *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102.  Instead, it "will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Id.*

In support of its motion to dismiss, the Government has submitted a declaration by a State Department official, which provides information about the State Department's 2020 suspension of many visa services due to COVID and the subsequent backlog of visa applications.  Defs.' Mot., Decl. of Chloe Dybdahl, ECF No. 4-1 [hereinafter Dybdahl Decl.], ¶¶ 5–6.  Other courts in this District have considered such supplemental evidence of the ostensible reason for any processing delay—COVID-related State Department service suspensions and backlogs—in connection with motions to dismiss.  *See, e.g.*, *Dastagir*, 2021 WL 2894645, at *1 & n.3, *4; *Shen v. Pompeo*, No. 20-cv-1263 (ABJ), 2021 WL 1246025 (D.D.C. Mar. 24, 2021); *Liu v. Blinken*, No. 21-cv-629 (TJK), 2021 WL 2514692 (D.D.C. June 18, 2021).  But this court is skeptical that it can consider such evidence at this stage, particularly in light of the D.C. Circuit's instruction that the unreasonable-delay analysis under *TRAC* is a fact-intensive inquiry.  *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.").[4]  As a result, the court declines both to take judicial notice of the Government's

---

[4] It strikes the court as problematic to accept the Government's reasons for delay as to any particular visa application at the motion-to-dismiss stage without *some* administrative record to corroborate those reasons.  This is especially true given the vagaries and lack of uniformity among consulates, which undercut a one-size-fits-all assertion that delays have been caused by COVID-related slowdowns across the board.

ostensible explanation for its delay and to convert the motion to one for summary judgment absent a more complete record. *Cf. Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020) (concluding that "any determination of whether defendants have unreasonably delayed adjudication . . . is premature" without further factual development).

That is not to say that a plaintiff automatically survives a motion to dismiss by merely alleging that a processing delay is unreasonable. A plaintiff in such a case is still subject to the standard for pleadings under *Twombly* and *Iqbal*. The court must therefore determine "whether [Plaintiff's] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Palakaru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (internal quotation marks omitted). Applying that standard here, Plaintiff has not made out a reasonable-delay claim under the APA.

Courts generally consider the first two *TRAC* factors together, *Dastagir*, 2021 WL 2894645, at *3–4, and here, they weigh in favor of the Government. There is no statutory or regulatory timeline that provides a "rule of reason" to govern the State Department's adjudication of a visa application. Indeed, "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). The delay at issue here is approximately twenty-nine months. The parties use different starting points to count the Government's delay, but "[s]imilar cases seem to focus on the delay from the last Government action to the issuance of the opinion." *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262

10

(RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021).[5]  Based on the facts as alleged in Plaintiff's

complaint, USCIS approved his I-130 spouse visa petition on September 5, 2019, marking the "last

Government action."  Compl. ¶¶ 19–20.  Compared to other cases, this delay is not on its face

unreasonable.  "Many courts evaluating similar delays have declined to find a two-year period to

be unreasonable as a matter of law."  *Ghadami*, 2020 WL 1308376, at *8 (citing cases).  Even

accepting Plaintiff's characterization of the delay (almost four years between submitting his

petition and the issuance of this opinion), the court cannot conclude that the delay is on its face

unreasonable.  *See, e.g.*, *Dastagir*, 2021 WL 2894645, at *4 ("Even if the Court started the clock

when [the plaintiff] filed the petition five years ago, several of this district's courts have noted that

delays between three to five years are often not unreasonable." (internal quotation marks omitted));

*Skalka*, 246 F. Supp. 3d at 154 (collecting cases concluding that delays of four and a half, five, and

ten years were not unreasonable in different immigration contexts).

     Plaintiff's allegation of unreasonable delay rests entirely on length of the delay.[6]  *See*

Compl. ¶¶ 17–22, 34.  He has offered no other facts that would allow this court to measure the

reasonability of the Government's delay.  He has not pointed to anything specific about his wife's

visa application to illustrate "the complexity of the task at hand," *Mashpee Wampanoag Tribal

Council*, 336 F.3d at 1102, or otherwise distinguish his case from others.  *See, e.g*, *Dastagir*, 2021

WL 2894645, at *4–5 (discussing, though ultimately dismissing, plaintiff's argument that, based

on statistics as to the average time of adjudicating a visa application, her visa should take less time

to adjudicate); *Shen v. Pompeo*, 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (discussing

---

[5] Plaintiff says the delay was "over three years" as of the filing of this lawsuit, counting from the day he filed his petition.  Compl. ¶¶ 17–21; Pl.'s Opp'n at 2.  The Government cites a nine-month delay, apparently starting the clock at the time Ms. Siddiqui became documentarily qualified, in June 2020.  Defs.' Mot. at 2; Dybdahl Decl. ¶ 4.

[6] That is, putting aside the allegations regarding CARRP, as to which Plaintiff has no live, justiciable claims, as discussed *supra*.

plaintiff's allegation that her visa application is particularly time sensitive).  Nor has he offered any kind of comparator to demonstrate that the Government has treated his wife differently from other applicants—for example, by pointing to others whose visas have been adjudicated in shorter amounts of time or comparing the length of his wife's wait time to that of others.  *See Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (suggesting that courts should not grant relief where there is "no evidence the agency . . . treated the petitioner differently from anyone else").  Absent such factual allegations, the court cannot find that the first two *TRAC* factors weigh in Plaintiff's favor.

The fourth factor, which considers how a court order in Plaintiff's favor would shift existing agency priorities, also weighs in favor of the Government.  "This factor carries the greatest weight in many cases[.]"  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020).  The D.C. Circuit has "refused to grant relief," even though all the other *TRAC* factors pointed toward relief, "where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'"  *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (alterations omitted) (quoting *In re Barr Lab'ys, Inc.*, 930 F. 2d 72, 75 (D.C. Cir. 1991)).  Plaintiff does not dispute that granting relief in his case would have precisely that effect:  it would move Ms. Siddiqui to the front of the visa-processing line while bumping all applicants currently ahead of her back one spot.  *See* Pl.'s Opp'n at 12.  "These sorts of judicial reorderings of agency priorities are inappropriate where the agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."  *Ghadami*, 2020 WL 1308376, at *9 (internal quotation marks and alterations omitted) (quoting *In re Barr Lab'ys, Inc.*, 930 F. 2d 72, 75 (D.C. Cir. 1991)).

12

The third and fifth factors, which consider the human interest and the extent of the prejudice, respectively, weigh in favor of Plaintiff. The complaint outlines some of the harm he has endured because of the delay in adjudicating his wife's visa, *see* Compl. ¶ 41, and the Government recognizes the "profound[] impact[]" the delay has had on Plaintiff and his family, Defs.' Mot. at 12. There can be no doubt that a prolonged separation like the one Plaintiff and his wife are experiencing is difficult on a family. Plaintiff's "interest in receiving a decision is undeniably significant." *Ghadami*, 2020 WL 1308376, at *9.

Finally, the sixth factor, regarding agency motivation, is neutral. Plaintiff does not allege any bad faith, *see generally* Compl.; Pl's Opp'n at 13, but, of course, "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," *TRAC*, 750 F.2d at 80. *See Sarlak*, 2020 WL 3082018, at *6 (finding sixth *TRAC* factor to be neutral where no bad faith is alleged).

Considering all the factors together, Plaintiff has not stated an unreasonable-delay claim under the APA. The hardship faced by Plaintiff and his wife, while no doubt significant, is outweighed by the rule of reason supplied by the case law and the fact that granting relief would be at the expense of others without any net gain. *See id.* (reaching same conclusion and citing other cases also reaching that conclusion).

This conclusion also disposes of Plaintiff's request for a writ of mandamus. Plaintiff has not alleged a separate mandamus claim, but he has styled his complaint as a "Complaint in the Nature of Mandamus," and he has asked the court to "issue a writ of mandamus compelling Defendants to issue an immigrant visa" to his wife and "compelling Defendants to explain to Plaintiff the cause and nature of the delay and inform Plaintiff of any action that may be taken to accelerate processing of the visa application." Compl. at 1, 8–9. "The standard by which a court

reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act." *Skalka*, 246 F. Supp. 3d at 152 (citation omitted).  The court must determine whether "the agency has unreasonably delayed the contemplated action" and apply its ruling to the mandamus request. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks omitted). The D.C. Circuit has made clear that courts are to "reject[] mandamus claims that would have . . . the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants."  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016).  For these reasons, the court denies Plaintiff's request for mandamus.

## IV.

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 4, is granted in full. A final, appealable order accompanies this memorandum.

Dated:  February 11, 2022

Amit P. Mehta
United States District Court Judge